Case 4:11-cv-00471-A   Document 14   Filed 12/30/11   Page 1 of 17   PageID 124



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DAVID LYNN LUTTRELL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:11-CV-471-A |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, David Lynn Luttrell, a state prisoner currently incarcerated in Iowa Park, Texas, against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I. Factual and Procedural History

On May 18, 2007, in Tarrant County, Texas, a jury found petitioner guilty of second-degree felony driving while intoxicated (DWI), true to the repeat offender notice in the

indictment alleging a prior felony DWI conviction, and assessed his sentence at eighteen years' imprisonment. (State Habeas R. at 98, 100)[1] Petitioner appealed, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (*Id.* at 102) *Luttrell v. State*, PDR No. 607-09. Petitioner filed a state application for writ of habeas corpus, raising the claims presented herein, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court. (State Habeas R. at cover) This federal habeas petition followed.

The testimony at petitioner's trial reflects that in the early morning hours of June 3, 2006, police officers set up a road block with their marked police cars, preceded by a "flair line," on the exit ramp at West Freeway and Rosedale in Fort Worth because of a one-car accident. (RR, vol. 3, at 23-24) Officer Spawn observed petitioner cut in front of the barricade, drive over the improved shoulder, strike the wrecked vehicle, back up, and drive around the wrecked vehicle onto Rosedale. (*Id.* at 24-33; RR, vol. 6, State's Ex. 8) The officer pursued

---

[1] "State Habeas R." refers to the court record for petitioner's state habeas application No. WR-75,434-01.

2

petitioner with his horn and sirens activated for approximately one mile before petitioner stopped. As the officer approached petitioner's vehicle, he smelled the odor of alcohol and asked petitioner to exit the vehicle. (*Id.* at 27, 34) Petitioner appeared to lean on the door frame to steady himself and, when asked, told the officer that he had had two beers that evening. The officer also noticed petitioner had slurred speech, bloodshot, watery eyes, and a "swayed, staggered walk." (*Id.* at 34-35) Based on his observations, the officer asked petitioner if he would be willing to perform a field sobriety evaluation, but petitioner refused and informed the officer that he had back and knee problems. (*Id.* at 35-39, 47, 90) At that point, the officer placed petitioner under arrest for DWI. (*Id.* at 40)

Officer Britt, who arrived to assist Officer Spawn, testified that when he arrived petitioner was already under arrest and that he observed petitioner swaying as he stood and leaning against Officer Spawn as he walked to the police car. (*Id.* at 111) Officer Britt also testified that he "went through" petitioner's car and that the car had a strong odor of alcoholic beverage.

At the police station, petitioner again refused to perform field sobriety tests and refused to provide a breath specimen.

3

(*Id.* 40-42) Officer Cantu, a member of the DWI task force at the time and a certified intoxylizer operator, testified that at the jail, petitioner had a strong odor of alcoholic beverage coming from his breath, bloodshot, watery eyes, and slurred speech. (*Id.* at 70-72, 77) The officer also observed petitioner "veer" to the right as petitioner walked toward him. (*Id.* at 78)

Petitioner stipulated that he had been previously convicted of DWI on March 22, 1995, and felony DWI on September 24, 2004. (*Id.* at 67-68)

During the punishment phase, the defense called three character witnesses, including petitioner's live-in girlfriend, Connie Levitt. (RR, vol. 5, 4-28)

## II. Issues

In three grounds, petitioner claims he received ineffective assistance of trial counsel. (Pet. at 6-10; Pet'r Mem. at 2)

## III. Rule 5 Statement

Respondent believes that petitioner has sufficiently exhausted his state court remedies as required by 28 U.S.C. § 2254(b)(1) and that the petition it neither barred by limitations or subject to the successive-petition bar. 28 U.S.C. § 2244(b), (d). (Resp't Ans. at 4-5)

## IV. Discussion

### A. *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

5

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[2]; *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002).

B.  *Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the

---

[2] The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

6

effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* at 688.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the standard set forth in *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

7

Petitioner first claims he rejected a plea bargain offer of two years in prison with no deadly weapon finding based on counsel's erroneous advice that the state could not prove his car was used as a deadly weapon where he struck an unoccupied vehicle and police officers were in the immediate area. (Pet. at 6)

Second, petitioner claims counsel was ineffective during the guilt/innocence phase by failing to file a motion in limine and/or object to the prosecutor's argument outside the record that the present offense was his sixth DWI.

Third, petitioner claims counsel was ineffective during the punishment phase by failing to object to the prosecutor's "hearsay assertions" while questioning Connie Levitt regarding details of one of petitioner's prior DWIs, the prosecutor's use of those assertions as fact during closing argument, and the prosecutor's comment during closing argument that petitioner was arrested for another DWI, after committing the instant offense, while on bond. (Pet. at 6-9)

Petitioner was represented at trial by Abe Factor and Tracie E. Kenan. (State Habeas R. at 60-64) The state habeas court conducted a hearing by affidavit, wherein Abe Factor responded to petitioner's allegations, in relevant part, as follows:

I have practiced criminal law in the state of

8

Texas for 34 years. I am a member of the Texas State Bar, I am board certified in criminal law, and have conducted hundreds of criminal trials and appeals over the course of my career.

I was retained to represent David Lynn Luttrell ("Luttrell") for the trial of his felony driving while intoxicated case before Judge Robert Gill in the 213 criminal district court. The first trial of the matter ended with a hung jury on or about March 6, 2007. The State reindicted Luttrell on or about April 17, 2007, though unlike the initial indictment, the reindictment included a deadly weapon paragraph.

. . .

Prior to trial, the State offered Luttrell a plea-bargain offer of two years incarceration with no deadly weapon finding. I transmitted the State's offer to Luttrell, who refused and insisted on exercising his right to trial. Contrary to Luttrell's current assertion, during our discussions regarding the State's offer, I did not tell him that his car could not be proven by the State to be a deadly weapon. Rather, I informed him that the facts of his case and the controlling law rendered the deadly weapon issue to be a close call either way. The fact that the jury ultimately made a deadly weapon finding in no way changes the fact that a deadly weapon finding under the facts and circumstances of the instant offense was less than automatic.

. . .

Prior to retrial, we made the strategic decision to stipulate to the jurisdictional priors in order to preclude the State from informing the jury of Luttrell's numerous prior driving while intoxicated convictions. I did not file a motion in limine prior to trial to preclude the State from referencing those priors, as I felt it unnecessary in that such evidence would be inadmissible where the defendant did not testify.

9

Regarding the prosecutor's statement regarding a sixth DWI offense at closing, the reference was so fleeting that I did not want to focus the jury's attention on the prosecutor's statement. During voir dire, I had qualified the jury on the premise that the instant trial was not to be about the defendant's past record. Moreover, from examining the stipulation, the jury would be able to infer that the instant offense was at least the defendant's fourth DWI offense, as one of the jurisdictional priors was from the district court. I made the strategic decision to avoid drawing the jury's attention to the matter, as I thought doing so would do more harm than good, as I was fully convinced that an instruction to disregard would be of limited effectiveness, and through numerous years of practice in this Court, in that I was of sound belief that Judge Gill would not have granted a mistrial had I so requested.

. . .

At punishment, Connie Levitt testified that she had lived with Luttrell for approximately 18 years. When the prosecutor questioned her regarding Luttrell's prior DWI offenses, she demonstrated some knowledge of the facts and circumstances pertaining to some of the priors, including the information that she had read the accident report from one of the offenses which included information that Luttrell had collided with a car occupied by children. Though some of the questions did assume facts not in evidence, on objection, Judge Gill would have assuredly held that "the witness could answer if she knows." As I was aware that the witness already knew the details of that particular offense, the information would have come into evidence anyway. Ergo, my strategic decision was that an objection would have been ineffectual and have run the risk of alienating the jury, while calling attention to the evidence admitted.

Pertaining to the State's questioning of Connie Levitt which implied that Luttrell was arrested for a

> DWI in December of 2006, the jury was fully aware that Luttrell was arrested for DWI in 2006, as that was the date of the instant offense. Describing it as his "fifth" in effect was a slight benefit; as, even if some of the jury was aware that the cross-examination dealt with the 2000 offense rather than the instant 2006 offense, the confusion could be the respository [sic] of reasonable doubt and demonstrate a lack on the part of the prosecution of a firm command of the facts. An objection would have likely brought it to the attention of the prosecution that the 2006 DWI arrest was actually Luttrell's sixth offense.

(State Habeas R. at 60-62) (citations to the record omitted)

Kenan, who was hired to assist in petitioner's retrial, averred in his affidavit that he had no knowledge of petitioner's claims regarding pretrial matters, but responded to the remaining claims, in relevant part, as follows:

> I gave the closing argument in the guilt/innocence phase of Luttrell's case. Factor made the objections to both of the State[']s closing arguments. I have examined the record and it is clear that Factor objected repeatedly in the state's closing. Specifically, Factor objected regarding the State using the phase "a choice he's made before-." Then again when the State said "This is not his first rodeo. He's done this before-." The record is clear that proper objections were made.
>
> . . .
>
> At punishment, Connie Levitt testified that she had lived with Luttrell for approximately 18 years. When the prosecutor questioned her regarding Luttrell's prior DWI offenses, she demonstrated some knowledge of the facts and circumstances pertaining to some of the priors, including the information that she had read the accident report from on[e] of the offenses which

> included information that Luttrell had collided with a car occupied by children. Though some of the questions did assume facts not in evidence, on objection, Judge Gill would have assuredly held that "the witness could answer if she knows." As I was aware that the witness already knew the details of that particular offense, the information would have come into evidence anyway. Factor's strategy was that an objection would have been ineffectual and have run the risk of alienating the jury, while calling attention to the evidence.
>
> Pertaining to the failure of an objection during the State's summation during the punishment phase, Factor did object regarding another DWI in 2006. That objection was overruled by the court. Factor objected again when the state talked about another DWI and the court sustained the objection.
>
> . . .

(*Id.* at 63-64) (citations to the record omitted)

The state habeas judge entered findings of fact consistent with counsel's affidavits, in conjunction with the documentary record, which were adopted by the Texas Court of Criminal Appeals(State Habeas R. at 68) Based on those findings, and applying the *Strickland* standard, the court concluded petitioner received effective assistance of trial counsel and failed to prove that but for counsel's alleged acts or omissions, the result of his trial would have been different. (*Id.* at 67-69) Petitioner has presented no argument or evidence in this federal habeas action that could lead the court to conclude that the state courts unreasonably applied *Strickland* based on the

12

evidence presented in state court. 28 U.S.C. § 2254(d).

As to petitioner's claim that he rejected the plea bargain offer based on counsel's erroneous advice, the state habeas court presumably found counsel's affidavit credible, and petitioner's assertions incredible, as to nature of counsel's advice regarding the plea bargain offer and the law relevant to the facts of petitioner's case. Such credibility determinations are entitled to deference, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002); *Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990). The state court found counsel did not provide petitioner "with wrong advice about whether the State could prove his car to be a deadly weapon." (State Habeas R. at 68) Petitioner's unsworn declaration does not provide clear and convincing evidence that the state court's finding was incorrect. No ineffective assistance is shown.

As to petitioner's second and third claims, strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for habeas relief. *Strickland*, 460 U.S. at 691; *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992). Counsel's strategic decision not to file a pretrial motion in

13

limine was not unreasonable, given petitioner did not intend to testify at trial.

Nor was counsel's strategic decision not to object to the state's closing argument during the guilt/innocence phase that this was "number six" for petitioner unreasonable. (RR, vol. 4, at 22) In federal habeas actions, improper jury argument by the state does not present a claim of constitutional magnitude unless it is so prejudicial that the petitioner's state court trial was rendered fundamentally unfair. To establish that a prosecutor's remarks are so inflammatory as to prejudice the substantial rights of a defendant, the petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that, in probability, but for the remarks no conviction would have occurred. *Hughes v. Quarterman*, 530 F.3d 336, 347 (5th Cir. 2008); *Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008). The argument, *albeit* improper, was made only once, and the evidence against petitioner was substantial. (RR, vol. 5, at 35) Thus, counsel's decision not to object on the basis that he did not want to draw further attention to the comment was reasonable and does not constitute deficient performance.

Further, counsel's strategic decision not to object during the punishment phase to the prosecutor's "hearsay assertions,"

while questioning Levitt regarding details of petitioner's prior DWIs, was not unreasonable. (*Id.* at 36) Petitioner complains that the prosecutor asserted in her questions that petitioner "hit another car that had passengers in it"; that "a seven-year-old child was injured as a result"; and that the accident report stated that petitioner drove into an occupied lane of traffic and "forced" a vehicle to hit him. According to petitioner, Levitt had no knowledge of these matters, and thus the assertions "were not proven." Petitioner also complains that the prosecutor argued these "hearsay assertions" as fact during summation. (Pet'r Br. in Support at 19) The record largely contradicts this claim. Levitt testified that she was aware of the collision and that children were passengers in the other car, that she had read the accident report, and that she had visited the accident site. (RR, vol. 5, at 11, 18-20) Furthermore, under state law, evidence of extraneous offenses is admissible during the punishment phase. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(Vernon Supp. 2010) Thus, counsel was not ineffective by failing to object to the prosecutor's line of questioning on the ground that he believed the judge would have overruled any such objection. Counsel is not required to make frivolous motions or objections. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir.

15

2002); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

Finally, the record reflects counsel did object to the prosecutor's argument that while out on bond petitioner "picked up" another DWI. (*Id.* at 36)

Having reviewed the entirety of the record, counsel's performance was not outside the wide range of professionally competent assistance, and petitioner has failed to show that but for counsel's acts or omissions, he would have been acquitted of the charges or that his sentences would have been significantly less harsh given his long history of DWIs. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as

petitioner has not made a substantial showing of the denial of a constitutional right.

    SIGNED December 30, 2011.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE